Argued October 6, decided October 14, 1913.

# LEONARD v. HOWARD.

(135 Pac. 549.)

**Contracts—Breach—Meeting of Minds.**

1. Where defendants in figuring their bid on the plumbing work in a certain building from the plans and specifications failed to properly check up the number of lavatories, toilets, bathtubs, etc., and by this oversight miscalculated the cost, and made an unprofitable bid which was accepted, they were not entitled to release on the ground that there was no meeting of minds, but were liable for damages for a failure to perform.

Contracts—Building Contracts—Bids.

2. One soliciting bids for services to be performed in the construction of a building owes no duty to a bidder to warn him that his bid is so low that he may lose money in complying with its terms.

Contracts—Building Contracts—Execution—Signature.

3. A contract for the plumbing work in a certain building is complete when it has the signature of the party to be charged and the oral acceptance of the other.

Principal and Agent — Contract—Signature by Agent—Authority—Question for Jury.

4. Where a contract between plaintiff and defendant for the plumbing in a building under construction by plaintiff was prepared in plaintiff's office, approved by his general manager and agent, and signed on plaintiff's behalf by one who had signed other contracts between plaintiff and subcontractors, such facts were sufficient to entitle plaintiff to go to the jury as to the agent's authority to sign.

Principal and Agent—Contracts—Execution by Agent.

5. Where a contract for the plumbing of a building which plaintiff was constructing was prepared in his office, approved by his general manager and agent, and signed on plaintiff's behalf by F. as well as by defendant company, plaintiff could not have repudiated the contract for want of sufficient execution, even if his signature had been necessary.

Names—Business Name.

6. In the absence of statutory provisions to the contrary, a person may transact business under any name or style he sees fit, though it indicates that the business is operated by a firm, while it is in fact owned and controlled by one person.

From Multnomah: GILBERT W. PHELPS, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action by C. M. Leonard, doing business as Leonard Construction Company, not incorporated, against A. L. Howard and P. Barger, partners doing business as Howard Plumbing & Heating Company, and National Surety Company, a corporation, for damages arising out of an alleged contract, the particulars of which are as follows: In the latter part of October, 1911, the defendants Howard Plumbing & Heating Company were requested by the Leonard Construction Company to bid upon the plumbing to be installed

in a building being constructed by the latter company at Sixth and Everett Streets in the City of Portland, and known as the Goode Building. Upon receiving this request, the defendant A. L. Howard, who does all the figuring upon bids for work to be done by the Howard Plumbing & Heating Company, procured from the Construction Company a set of the plans or blue-prints which purported to show the fixtures required for the plumbing of the Goode Building. After procuring these blue-prints, Mr. Howard prepared and submitted to the Leonard Construction Company the following bid:

"Portland, Oregon, Oct. 27, 1911.
"Leonard Construction Company:
"I agree to do the plumbing for Mrs. E. F. Goode, situated on Sixth and Everett streets, for the consideration of forty-nine hundred seventy-five dollars.
"HOWARD PLUMBING & HEATING Co.,
"By A. L. HOWARD."

Thereafter on the 15th day of November, 1911, while Mr. Howard was absent from the state, the Leonard Construction Company notified the defendant P. Barger that it had accepted the bid of the Howard Plumbing & Heating Company, and requested that he immediately sign a written contract for the plumbing of the building mentioned in such bid. In response to this request Barger went to the office of the Leonard Construction Company, and was there presented with the following written order, which had been prepared in said office:

"Leonard Construction Company,

"General Contractors.

"McCormick Building, Chicago.

"Canadian Leonard Construction Co., Limited,

"General Contractors, Canada.

"Portland, Oregon, Nov. 15th, 1911.

"Order No. 92–C68.

"Howard Plumbing and Heating Company, Portland, Oregon:

"Ship to Leonard Construction Co., 'Not Inc.,' the Goode Building No. 2, at southeast corner Sixth and Everett streets, Portland, Oregon. How ship . . . When, as stated below. Terms, as stated below.

"Herewith our order for all of the material and labor necessary to completely supply and erect in place a complete plumbing system, including sewerage and gas piping for Mrs. E. F. Goode's building, now being erected at Sixth and Everett streets, Portland, Oregon, all in accordance with plans and specifications by Mr. H. Henselman, architect, all of which being identified by you, and in accordance with the plumbing rules and regulations of the city of Portland and the requirements of the water board. All work is to be done to the thorough satisfaction of ourselves and that of the owner, and subject to the inspection and acceptance of the local sanitary and other city inspectors having jurisdiction. It is distinctly understood that all of the fixtures and fittings of every kind and nature entering into this work shall be in strict accordance with that called for and specified in the above specification, and that the various fire pipes and their connections will be installed subject to the acceptance of the city fire marshal.

"It is further understood and agreed that you will start to work on this order at once, and guarantee to complete the same not later than February 15, 1912; it being expressly understood that you are to carry on

your work at all times at such places and at such time as not to delay the progress of the building or the work of other contractors, and as directed by our superintendent from time to time.

"In consideration of the above order, it is agreed that you will hold us and Mrs. E. F. Goode free and harmless from any liability, loss, damage, or costs arising or growing out of damage or injury to property or damage or injury to persons which shall be caused wholly or in part of your performing the above contract.

"You are also to furnish us with a surety bond, with an approved surety company, in the amount of one-half of the contract price, this bond to remain in force for one year after date of completion of your work to cover the faithful performance of this contract, said bond to be delivered to us inside of ten days from date.

"You are also to make all necessary connections for sewer and water supply. All permits necessary for your work are to be procured by you at your expense. You are also to submit to us for our approval a plan showing lay-out, giving sizes and location of all mains, branches, valves, etc., including supply system, also showing wastes, soils, drains, vents, etc., together with such other supplementary data which might be required for the better understanding of the work.

"We agree to pay the premium on the above surety bond, amounting to thirty-one dollars and fifty cents ($31.50) upon presentation of bill for same.

"For the prompt and satisfactory execution of this order, we agree to pay you the sum of forty-nine hundred and seventy-five dollars ($4,975), payments to be made as follows: 80 per cent. of the value of all work completed by the first of any month to be paid for within ten days next following. Final payment to be made within thirty days following completion and acceptance of your work. Your final bill is to be accompanied by waiver of lien, together with an acceptance from the plumbing inspector, and your written

one-year guarantee that the system will be maintained in perfect operation during that period.

"LEONARD CONSTRUCTION Co., 'NOT INC.,'
"By CHAS. A. FINGAL.
"CAF–JH
"Accepted Nov. 11th.
"By HOWARD PLUMBING & HEATING Co.
"P. BARGER."

This order was then signed by one Chas. A. Fingal, who wrote his name under the typewritten words, "Leonard Construction Co., Not Inc.," and by P. Barger, who wrote the words "Nov. 11th" after the typewritten word "accepted," and the words "Howard Plumbing & Heating Co." after the typewritten word "By," and over the words "Howard Plumbing & Heating Co." Mr. Barger also wrote the word "Nov. 11th" and his own name upon one or two copies thereof at this time; but these copies were not signed by anyone on behalf of the Leonard Construction Co., Not Inc. Mr. Barger was also requested at this time to sign certain blue-prints which he was told were the plans of the building mentioned in the written order, with which request he complied. Thereafter on the 16th day of November, 1911, the Construction Company delivered to Barger certain blue-prints purporting to be the plans of the Goode Building to enable the Howard Plumbing & Heating Company to proceed with the installment of the plumbing system provided for in the order. On the 17th day of November, 1911, the Construction Company called for the surety bond provided for in the order, and said bond was on that day executed and delivered to the Construction Company.

Later defendant Barger notified the company that there was a discrepancy between Howard's count of the number of lavatories, toilets, bathtubs, and slop

sinks specified in the plans submitted and the number shown on the plans signed by him in this that by Howard's count there were 75 lavatories, 39 toilets, 26 bathtubs, and 3 slop sinks called for on the blue-prints submitted to him for the purposes of a bid, while on the prints signed by Barger for the Howard Plumbing & Heating Company the number specified was 113 lavatories, 59 toilets, 48 bathtubs, and 7 slop sinks. The Howard Company, by Barger, then notified the plaintiff that it would not install the plant at the price bid, and thereupon plaintiff made formal demand on the Howard Company and its surety, the National Surety Company, for performance of the contract, and, this being refused, relet the contract at a price $1,852 higher than that bid by the Howard Company, and thereafter brought this action for damages.

The defendants answered by a denial of every allegation of the complaint except that of their partnership, and then by way of affirmative defense alleged that the Leonard Construction Company, at the date mentioned in the complaint, represented and held out to the defendants that it was a firm of general contractors doing business in Portland, and requested the defendants to submit a bid of a complete plumbing system for a building to be erected by it for Mrs. E. F. Goode, and, for the purpose of enabling defendants to prepare such bid, delivered to defendant A. L. Howard certain blue-prints purporting to be the plans of said building, etc.; that Howard made a careful examination of said prints, and found that the same showed 75 lavatories, 39 toilets, 26 bathtubs, and 3 slop sinks to be installed in the building, and thereupon prepared and submitted to the Leonard Construction Company a bid for the Howard Plumbing & Heating Company, agreeing to do the plumbing in the Goode Building for the sum of $4,975; that thereafter

67 Or.—14

on the 15th day of November, 1911, while defendant Howard was absent from the state, the Leonard Construction Company notified defendant Barger that the company had accepted the bid, and requested that he immediately sign a written order which it had prepared, and which has been heretofore set out; that said order represented that the construction company was a firm of general contractors composed of more than one person, and that the plumbing system to be installed was to be in accordance with the plans of the architect; that, relying on such representations, and believing that the plans were the same delivered by the construction company to Howard, Barger signed said order, and also signed certain blue-prints presented to him by said company purporting to be the plans of the building mentioned in said written order; that thereafter upon an examination of a copy of said blue-prints defendant Barger found that they called for 113 lavatories, 59 toilets, 48 bathtubs, and 7 slop sinks, instead of 75 lavatories, 39 toilets, 26 bathtubs, and 3 slop sinks as shown in the prints submitted to Howard; that thereupon defendant Barger notified plaintiff of the differences, and offered to install the number of toilets, etc., shown in the blue-prints furnished to Howard for the price bid, but declined to install any greater number, which offer plaintiff refused; that, if defendants had known that the Leonard Construction Company was not a firm of contractors composed of more than one person, they would not have bid upon the contract; and that their bid was induced by the fact that it was represented to them by plaintiff that the Leonard Construction Company was a firm of contractors composed of more than one person. There was a verdict and judgment for plaintiff and the defendants appeal.          AFFIRMED.

For appellant, Howard Heating Company, there was a brief over the names of *Cake & Cake* and *Mr. John T. McKee,* with oral arguments by *Mr. William M. Cake* and *Mr. McKee.*

For appellant, National Surety Company, there was a brief over the name of *Griffith, Leiter & Allen,* with an oral argument by *Mr. Rufus A. Leiter.*

For respondent there was a brief over the names of *Bauer & Greene* and *Mr. L. H. Tarpley,* with oral arguments by *Mr. Thomas G. Greene* and *Mr. Tarpley.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1, 2. We conclude from the evidence that the plans submitted to Howard were identical with those signed by Barger, and that the discrepancy probably arose from the failure of Howard to properly check up his work when he examined them. For this carelessness or mistake plaintiff cannot be held accountable, the mistake not being mutual, and no fraud on the part of plaintiff being charged or proved: 20 Am. & Eng. Ency. of Law (2 ed.), 813, 824, 825. We cannot assent to the proposition that by reason of the mistake made by Howard there was no "meeting of minds" upon a contract. The subject of the contract, the thing to be done, was the plumbing in the Goode Building. As a detail of this a certain number of toilets, lavatories, and sinks were sketched upon the plans submitted to the defendants. They bid upon the contract, but by inattention overlooked some of the details, and bid too low. The case is not different from what it would have been had they correctly counted the articles to be furnished, and by some mistake or oversight miscalculated the cost of them, and thereby been misled into making an unprofitable bid. Had a fraudulent

plan been furnished defendants, or had they by any wrongful act or neglect of plaintiff been induced to make the bid, the case would have been different; but in our opinion the evidence shows that the low bid made by them was the result of a mistake, and this mistake the result of Howard's careless examination of the plans. Under such circumstances neither law nor equity will help them: *Brown* v. *Levy,* 29 Tex. Civ. App. 389 (69 S. W. 255); *Steinmeyer* v. *Schroeppel,* 226 Ill. 9 (80 N. E. 564, 117 Am. St. Rep. 224, 10 L. R. A. (N. S.) 114); *Crilly* v. *Board of Education,* 54 Ill. App. 371. There is no such discrepancy between the bid submitted and the next higher bid as would justify us in saying, as a matter of law, that plaintiff was thereby put upon notice that Howard had made a mistake. That bid was $1,852 higher, and another bid was $1,900 higher than that. We are not aware of any rule of law or morals that requires a person soliciting bids for services to be performed to warn the bidder that his bid is so low that he may lose money by complying with its terms.

3, 5. The objection most strenuously urged by defendant is that the agreement is unilateral, and that, plaintiff not being bound, neither party is bound. The contract or order is signed as follows: "Leonard Construction Co., Not Inc. CAF–JH. By Chas. A. Fingal. Accepted Nov. 11th, 1911. By P. Barger. Howard Plumbing & Heating Co." All the matter above specified was typewritten, except the signature of Chas. A. Fingal, the date "Nov. 11th," and the signature of Barger. It is now claimed that there is no proof of Fingal's authority to sign the paper, and that the construction company is not bound by his signature. The paper seems to have contemplated a signature by both parties, although the contract was complete by that of "the party to be charged" and the

oral acceptance by the other. But in the case at bar there was evidence that Fingal had signed other contracts with subcontractors, that the contract was prepared in the office of the plaintiff, and approved by its general manager and agent, and these facts were sufficient to go to the jury as evidence of Fingal's authority to sign. Plaintiff could not have repudiated the contract for want of sufficient execution, even if his signature had been necessary.

6. The fact that plaintiff was doing business under the name of Leonard Construction Co., Not Inc., is no defense to this action. Aside from statutory provisions which did not exist in this state at the time this contract was entered into, there is nothing to prohibit a person from transacting business under any name or style he sees fit: 29 Cyc. 270, and cases there cited. It is not alleged nor shown by the testimony that the firm name was assumed for any fraudulent purpose, or that the plaintiff was insolvent, or that defendants in any way were placed in any worse position by reason of dealing with plaintiff under a partnership name. The practice is not uncommon in this state. The writer recalls the case of a banking institution with a state-wide reputation for solidity, which, while owned and controlled by a single person, has been carried on for years in the name of a partnership long since dissolved, and this is only one of many instances that might be mentioned.

In the view that we have taken of the law in this case, the rulings of the lower court are correct and the judgment should be affirmed.          AFFIRMED.

MR. JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.