## SALIGMAN et al. v. UNITED STATES.

### No. 3378.

District Court, E. D. Pennsylvania.

Aug. 25, 1944.

506

Stanley Folz (for Sundheim, Folz, Kamsler & Goodis), of Philadelphia, Pa., for plaintiffs.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for the Government.

KALODNER, District Judge.

The plaintiffs have brought this action against the United States of America under the Tucker Act, 36 Stat. 1093 (1911) as amended, 28 U.S.C.A. § 41(20). The sole question for determination is whether the plaintiffs are entitled to recover damages for their unilateral mistake in the preparation of a bid contract accepted by the United States and now fully performed.

The cause was heard without a jury and was submitted for consideration upon the pleadings, additional testimony and arguments of counsel. Accordingly, I make the following

## Findings of Fact

1. On or about February 12, 1942, in response to an invitation sent out by the Philadelphia Quartermaster Depot to bid for the award of a contract for the manufacture of 55,900 head bands, plaintiffs submitted their bid to be awarded this contract, in accordance with the specifications contained in the invitation, at a unit price of $.164 per head band, containing 50% foreign wool and 50% domestic wool.

2. On February 14, 1942, plaintiffs' bid was accepted by the Quartermaster Depot, which, on that date, issued Purchase Order No. 6773 awarding the contract to plaintiffs.

3. The next highest bids were $.222 and $.2487 per unit, both for all domestic wool.

4. About two weeks after the acceptance of their contract and before they had begun work thereunder, plaintiffs discovered that in computing the cost for the manufacture of the head bands prior to the submission of their bid they had omitted the cost of the wool to be used, which amounted to approximately $.125 per head band, and immediately notified, by telephone, the Quartermaster Depot of this error.

5. Plaintiffs' aforesaid telephone call was transferred to the Legal Department of the Quartermaster Depot and they were advised that they could either refuse to perform and be held accountable in damages, or complete the contract and make claim for adjustment.

6. On February 28, 1942, plaintiffs wrote to the Quartermaster Depot explaining the error made and setting forth the alternatives which the Legal Department of the Quartermaster Depot had advised were open to them, and stating that they intended to perform the contract and file claim for relief.

7. Under date of March 4, 1942, the Quartermaster Depot replied that the claim should be addressed to the Comptroller General. Plaintiffs acted accordingly. Their claim was rejected by the Comptroller General.

8. Plaintiffs have completed the contract and in fact manufactured 62,340 head bands.

9. The mistake of plaintiffs was unilateral.

10. The defendant had no notice prior to its acceptance of plaintiffs' bid that there was any error in the bid submitted.

11. Plaintiffs' bid was "in line" with the higher bids and defendant was not and should not have been put on notice that plaintiffs had made a mistake in the submission of their bid.

12. No promise was made to the plaintiffs that they would be afforded relief.

13. No person authorized to bind defendant promised plaintiffs any relief.

### Discussion

■ There is no dispute as to the law applicable in this controversy. Ordinarily no relief will be granted to a party to an executory contract in the case of a unilateral mistake. In such case when a bid has been accepted the bidder who has made a mistake will be bound and must bear the consequences thereof. Ellicott Machine Co. v. United States, 44 Ct.Cl. 127; American Water Softener Co. v. United States, 50 Ct.Cl. 209; United States v. Conti, 1 Cir., 119 F.2d 652; Steinmeyer et al. v. Schroeppel, 226 Ill. 9, 80 N.E. 564, 10 L.R.A.,N.S., 114, 117 Am.St.Rep. 224; Leonard v. Howard et al., 67 Or. 203, 135 P. 549; Star-Chronicle Pub. Co. v. New York Evening Post, Inc., et al., 2 Cir., 256 F. 435, 442; and Moffett, Hodgkins & Clarke Co. v. City of Rochester, 2 Cir., 91 F. 28.

■ However, if the party receiving the offer or the bid, knows or has reason to know because of the amount of the bid, or otherwise, that the bidder made a mistake, the contract is voidable by the bidder. 5 Williston, Contracts, Sec. 1598; 2 Restatement, Contracts, Sec. 503; Alta Electric & Mechanical Co. v. United States, 90 Ct.Cl. 466; Kemp v. United States, D.C.D.Md., 1941, 38 F.Supp. 568; State of Connecticut v. F. H. McGraw & Co., D.C.D.Conn., 1941, 41 F.Supp. 369. The Kemp case is an excellent illustration of the application of this principle. In that case the government solicited bids on a motor-driven drilling machine. Plaintiffs' bid was the lowest, namely, $2,953.65, and the contract was awarded to him. The other bids were for $10,112 and $12,133. After entering into the formal contract, plaintiff discovered that he had made a gross error. The government refused to permit him to avoid the contract and subsequently deducted the additional cost incurred from the payment due plaintiff on other contracts. The court

held that the plaintiff was entitled to recover, for not only was the difference in the bids sufficient to put one on notice that something was wrong, but the Army officer in charge also admitted that he was struck by the great discrepancy and that the government was obviously getting something for nothing.

■ Can we say the same situation holds in the case at bar? Here the plaintiffs' bid was $.164 per unit containing 50% domestic wool. The next higher bid was $.222 for 100% domestic wool. Lieut. Col. William A. Peterson, the contracting officer for the Quartermaster Depot, who passed upon the bids in question and signed the purchase order to plaintiffs, testified (by deposition) that by comparing all bids submitted the bid of plaintiffs was "in line." All domestic wool is more expensive than 50% domestic, although the witness Saligman testified that the difference is only one-eighth of a cent per head band. Lieut. Col. Peterson's testimony was that the fact that plaintiffs' bid was not for all domestic wool was among the considerations for rejection of plaintiffs' claim by the Comptroller, and " * * * the difference in price (of the bids) was not such as to make it appear that an error had been made in the bid because the bid was reasonable."

Considering all the circumstances, I am of the opinion the government had no reason to suspect that plaintiff had made a mistake. It is true that plaintiffs' testimony that the difference between 50% domestic and 50% foreign wool and all domestic wool is only one-eighth of a cent per unit is uncontradicted; that Lieut. Col. Peterson testified that he was acquainted with the prices of wool at the time of the consideration of the bids (although he did not have the information at the time of the depositions); and that the government has its experts on valuation and costs; yet I must agree with the defendant that the government is not obligated to act as "nursemaid" for bidders when the price is "in line." Plaintiffs rest the heaviest weight of their argument on the fact that the error should have been apparent because the contracting officer had a staff of experts to aid him. However, plaintiffs are not in a position to complain, for the experts are employed for the benefit and protection of the government against excessive bids and not for the benefit of the contractor. The theory of the plaintiffs makes a

use of the experts not contemplated by the government here, and places on this agency the burden of examining every low bid for possible error by the bidder.

█ Plaintiffs urge an alternative basis for recovery. Their contention is, briefly, that they performed the contract in reliance on the assurance of the government's representatives that relief would be granted. Cited in support of this proposition is the case of Rappoli Co. v. United States, 98 Ct.Cl. 499. There the error was discovered *prior* to the execution of the contract. The contractor sought to withdraw its bid and (to quote from the opinion): "Plaintiff was given an interview with a formidable group of officers and heard fair words from the officer entrusted by the Government to make the contract. It was told that the Department had no desire to take advantage of mistakes; that the mistake could be corrected by going through a routine; that the Government desired that the contract be made in the regular way so that the work could proceed promptly; that when the routine was finished plaintiff would receive what it was entitled to." Plaintiffs, in reliance upon the promises of the government officials *then* executed the contract. The court applied the principle that the parol evidence rule does not prevent a court from enforcing a promise made concurrently with the execution of a contract, it being to the convenience of both parties that the contract, without correction, be executed at the moment, while time is taken to correct the mistake.

The difference between the Rappoli case and the instant case is patent. The plaintiffs here did not enter into the contract because of, or in reliance upon, the alleged assurances. *After* the contract was executed plaintiffs were merely advised as to the course of action open to them—and as to where they *could* make their claim for relief. No assurance of relief was given and, at that time, relief could be granted only by the General Accounting Office. 42 Stat. 24 (1921), 31 U.S.C.A. § 71.

█ Counsel for plaintiffs has called to my attention Procurement Regulation No. 3, Sec. 308–B, Par. 22, 665 (2 C.C.H. War Law Service—Government Contracts), issued by the Army pursuant to Title II of the First War Powers Act, 1941, 50 U.S.C.A.Appendix, § 611, and Executive Order No. 9001, 50 U.S.C.A.Appendix, § 611 note, which empowers each chief of a technical service to enter into supplemental agreements to correct unilateral mistakes of contractors. The exercise of this power, however, rests with the proper officials of the procurement agencies—not with the courts. This Court's disposition of the issue here is without prejudice to the plaintiffs' administrative remedy as stated. The case of C. P. Brown Manufacturing Company (reported in C. C. H. War Service—2 C.C. P. 439) cited by plaintiffs is a decision of the Board of Contract Appeals, composed of Army officers.

Accordingly, I state the following

## Conclusions of Law

1. There is no competent evidence submitted to show that the defendant knew or should have known of the alleged mistake in the bid.

2. There is no competent evidence showing any waiver by the defendant of its rights under the contract.

3. Plaintiffs are not entitled to judicial relief, and the complaint should be dismissed.

An appropriate order may be submitted.