**C. N. MONROE MANUFACTURING COMPANY, a Michigan corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 12869.

United States District Court
E. D. Michigan, S. D.

July 27, 1956.

Langs, Molyneaux & Armstrong, Detroit, Mich., for plaintiff.

Fred W. Kaess, U. S. Atty., Detroit, Mich., for defendant.

BROOKS, District Judge.

This action was brought by the plaintiff, C. N. Monroe Manufacturing Company, against the United States under Title 28 U.S.C.A. § 1346(a) (2). The plaintiff, who is a small contractor, mistakenly omitted an item in computing its bid on a Government contract, and having fulfilled the contract, seeks restitution for producing the omitted item.

The evidence given upon the trial and the stipulation of the parties established that the facts of this case are practically undisputed. The contract was for the manufacture of certain ordnance equipment consisting of two items composing an assembly. One of the items was a bushing, which is a cylindrical object approximately 3½ inches long and 4 inches in diameter, weighing approximately 5 pounds, and the other item was a lifter body, which is a heavy steel casting 22½

inches long, weighing approximately 28½ pounds. The plaintiff in computing its bid inadvertently overlooked the larger of the two items and submitted a bid for the assembly which was based on the cost of producing the small bushing. The plaintiff did not discover the mistake until the bushings were completed and ready for delivery. At that time a Government inspector called the omission to its attention. Several conferences were held with officials of the Detroit Ordnance District who had issued the invitations to bid and plaintiff was given the alternative of completing the contract and applying for administrative relief or being held liable for breach of contract. The plaintiff elected to fulfill the contract, and upon being denied administrative relief, filed this action.

In response to the invitation to bid on this ordnance equipment, ten bids were received by the Government as follows:

| | Bidder | Bid per Unit | Bid for 750 Units |
|---|---|---|---|
| 1. | C. N. Monroe Mfg. Co. | $ 3.91 | $ 2,932.50 |
| 2. | Urschel Engr. Co. | 6.40 | 4,800.00 |
| 3. | Big Beaver Auto. Screw | 18.00 | 13,500.00 |
| 4. | Deubel Art Tool | 18.90 | 14,175.00 |
| 5. | Acme Foundry & Machine Co. | 21.45 | 16,087.50 |
| 6. | Curtis & Smith Mfg. Co. | 22.65 | 16,987.50 |
| 7. | Thurman Machine Co. | 23.75 | 17,812.50 |
| 8. | Berkley Machine Prod. | 30.25 | 22,687.50 |
| 9. | G. & W. Tool Mfg. Co. | 39.50 | 29,625.00 |
| 10. | C & B Machine | 300.00 | 225,000.00 |

Upon receipt of these bids by the Detroit Ordnance District they were submitted to a price analyst. The price analyst determined that there was no price history for this particular equipment, and being satisfied that the Government's interests were protected because of the number of bids and the competitiveness of the prices, recommended to the contracting officer that the contract be awarded to the lowest bidder. The contracting officer examined the bids and awarded the contract to the plaintiff.

More than 10 pounds of bar steel was required to produce the bushing and approximately 32 pounds of cast steel was needed to produce the lifter body. The reasonable market price for the 42 pounds of raw material was $9.14. The sub-contracted cost for lubriting and heat treating paid by the plaintiff amounted to $2.92 for both items. Plaintiff's total cost of material and sub-contracted treatment amounted to $12.60 for each complete assembly. Labor on the two items came to $2.52 per unit. The factory burden was $3.13 per unit, and the general administrative expense amounted to $2.-15 per unit. Plaintiff's total cost without profit for manufacturing the assembly was $19.80, with the lifter body costing approximately four times more than the bushing. There was uncontradicted testimony that the assembly could not have been produced by any other contractor for less than $18 per unit allowing for a reasonable margin of profit.

The only excuse offered by the plaintiff for its carelessness in computing its bid was that at the time the invitation to bid was received through the mail that drawings of the bushing were enclosed but the drawings for the lifter body were not included. The plaintiff relies, however, on the variances between the submitted bids to place the Government on notice of plaintiff's unilateral mistake, contending that because of the great discrepancy between the two low bids and those of the other bidders, the Government had reason to know that both the plaintiff and the second lowest bidder had made a substantial mistake in computing their bids and that it would be inequitable and unjust to hold the plaintiff to his contract.

■ It is well settled that if a material unilateral mistake is known to the other party or because of accompanying circumstances the other party had reason to know of it, the party making the mistake has a right to recision. Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L. Ed. 1108; Armour & Co. v. Renaker, 6 Cir., 202 F. 901; United States v. Jones, 9 Cir., 176 F.2d 278; Saligman v. United States, D.C., 56 F.Supp. 505; State of Connecticut v. F. H. McGraw & Co., D. C., 41 F.Supp. 369; Kemp v. United States, D.C., 38 F.Supp. 568.

It is to be noted that all but the two lowest bids were for $18 or more, excluding the highest bid of $300, which under the proof in this case was clearly out of line. The average of the next seven bids above the two lowest bids is $24.96. This is six times the amount of plaintiff's bid of $3.91 and approximately four times the second bid of $6.40. Clearly under the evidence in this case plaintiff's bid and the next lowest bid were the result of a mistake by the bidders in omitting the larger item of the assembly in computing their bids. Both of their bids were less than the cost of the raw material required to produce them. As the contracting officer who awarded this contract testified, if he had seen the two items of equipment which were exhibits at the trial, or if he had looked at the drawings of them, he would have been put on notice that something was wrong. He testified that even a layman could tell that the two items could not be manufactured for $3.91, the amount of plaintiff's bid, or $6.40, the amount of the second lowest bid. The presence of the two erroneous low bids was the reason the defendant overlooked the error, and if the two mistakes had not coincided, as the contracting officer testified, the award would not have been made without verification of plaintiff's bid. However, it is by no means inconceivable that two bidders could make similar mistakes, and when this fact is recognized, the gross error of the plaintiff becomes obvious when all bids are compared. See 16 Minn.L.R. 137–159.

■ It is well known that the vast operations of the Government require the awarding of a tremendous number of contracts on competitive bids, and as stated in Saligman v. United States, D. C., 56 F.Supp. 505, the Government should not be obliged to act as a nursemaid for careless bidders. It is true that in this case the plaintiff made an honest but careless mistake. The defendant did not have actual knowledge of the error and no inference of bad faith exists on the part of the Government in awarding the contract. However, there is justice in plaintiff's complaint that to hold it to the severe consequences of its unilateral mistake would be harsh and inequitable. It is not believed that an honest, fair-minded and reasonable man in good conscience would seek to maintain such a gross and inequitable advantage of a mistaken bidder when as in this case he had reason to know of the mistake, and the Government is required to maintain this same standard of fairness with those who contract with it. Kemp v. United States, D.C., 38 F.Supp. 568, 570. Under all the circumstances it must be held that the Government should have known at the time it awarded the contract that a gross mistake had been made by the plaintiff and therefore it is inequitable to hold the plaintiff to the terms of the contract.

Plaintiff's unilateral mistake was not discovered until after completion of production of one of the items of the assembly and the contract was thereafter completed by production of the other item. Neither item is of any value except for Army use, and there is no indication in this record that the parties can or desire to be placed in status quo.

■ The question arises as to the nature of relief to be afforded. See Restatement of Law of Restitution, Sections 59, 107, 142. Obviously the Government would have accepted the third lowest bid of $18 if the two erroneous

452

bids had not been submitted, and the record shows that $18 is a fair and reasonable price for the production of the assembly. The Government therefore would not be prejudiced in giving the relief the plaintiff is seeking other than its loss of a bargain that was brought about through a gross and obvious mistake. Upon completion of the contract the plaintiff was paid $3,077.17, the Government having agreed to accept a variation in the quantities of the assembly pursuant to the contract by accepting 787 assemblies instead of 750 assemblies. The cost to the Government would have been $14,166 if the third lowest bid had been accepted, which is $11,088.83 more than paid to the plaintiff. While the Government has been unjustly enriched in the above amount, plaintiff has recognized in its complaint that recovery under 28 U.S.C.A. § 1346(a)(2) is limited to not more than $10,000.

Plaintiff's counsel will tender judgment on notice.