**WENDER PRESSES, INC.**
**v.**
**The UNITED STATES.**
**No. 134–63.**

United States Court of Claims.
April 16, 1965.

---

Hal Witt, Washington, D. C., for plaintiff. Richard J. Scupi, and Scupi & Witt, Washington, D. C., were on the briefs.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant. Jay Carroll Cox, Swainsboro, Ga., was on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

PER CURIAM:

This case was referred pursuant to Rule 54(b) to Trial Commissioner Saul Richard Gamer, with directions to make a recommendation for conclusion of law on plaintiff's motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion filed October 23, 1964. Plaintiff sought review of the commissioner's opinion and recommendation for conclusion of law and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is, therefore, not entitled to recover and its motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

## OPINION OF COMMISSIONER

This is another case in which a contractor claims it should be relieved of its contract obligations on the ground that it made a mistake in its bid.[1] With respect to its failure to consummate the purchase of one item of surplus property included in its contract, plaintiff seeks rescission of this portion of the contract and recovery of its bid deposit of $1,550.-30 made on such item. Plaintiff did not claim a mistake nor advise defendant of it until after the contract came into being.

■ It is plain that plaintiff may recover only if defendant's responsible officials knew or should have known of the mistake at the time the bid was accepted. This court has so held many times. Allied Contractors, Inc. v. United States, 310 F.2d 945, 159 Ct.Cl. 548 (1962);

Alabama Shirt & Trouser Co. v. United States, 121 Ct.Cl. 313 (1952); Hyde Park Clothes, Inc. v. United States, 84 F.Supp. 589, 114 Ct.Cl. 424 (1949); Massman Construction Co. v. United States, 60 F.Supp. 635, 102 Ct.Cl. 699, cert. denied, 325 U.S. 866, 65 S.Ct. 1403, 89 L.Ed. 1985 (1945); Dougherty & Ogden v. United States, 102 Ct.Cl. 249 (1944); Rappoli Co., Inc. v. United States, 98 Ct.Cl. 499 (1943); Alta Electric & Mechanical Co. v. United States, 90 Ct.Cl. 466 (1940).

■ Since plaintiff did not directly apprise defendant of the mistake prior to the acceptance of plaintiff's bid, as was, for instance, the situation in Rhode Island Tool Co. v. United States, 128 F. Supp. 417, 130 Ct.Cl. 698 (1955), Alta Electric & Mechanical Co., supra, and Rappoli Co., Inc., supra, so that there is no showing of any actual knowledge, the only question is whether defendant's officials should have known of the mistake. Included in this problem is the question of whether, even though they could not have known with certainty from the bid data that a mistake had been made, there nevertheless was enough to have reasonably cast upon defendant's officials the duty to make inquiry, which inquiry would have led to the requisite knowledge. See Doke, Mistakes in Government Contracts—Error Detection Duty of Contracting Officers, 18 Sw.L.J. 1 (1964). For although an award normally results in a binding contract fixing the parties' rights and obligations (United States v. Purcell Envelope Co., 249 U.S. 313, 39 S.Ct. 300, 63 L.Ed. 620 (1919)), so that "Ordinarily no relief will be granted to a party to an executory contract in the case of a unilateral mistake", Saligman v. United States, 56 F.Supp. 505, 507 (E.D. Pa., 1944), nevertheless an acceptance of

---

1. "This subject has been treated many times by various experts in the field, but it is an important subject to those of us who work with Government procurement problems because bidders on Government contracts are continually making mistakes it seems. We in the General Accounting Office never cease to be amazed at the rate responsible business concerns continue to make careless mistakes in bidding on Government contracts. The pace never seems to abate." Welch, Mistakes in Bids, 18 Fed.B.J. 75 (1958). In one fiscal year (1954) a survey revealed that there were 404 mistake-in-bid cases submitted to the Comptroller General for decision. (Id.)

a bid containing a palpable, inadvertent, error cannot result in an enforceable contract. Moffett, Hodgkins & Clarke Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 44 L.Ed. 1108 (1900); United States v. Metro Novelty Manufacturing Co., 125 F.Supp. 713 (S.D. N.Y., 1954); Kemp v. United States, 38 F.Supp. 568 (D.Md., 1941). An "offeree will not be permitted to snap up an offer that is too good to be true; no agreement based on such an offer can then be enforced by the acceptor." 1 Williston, Contracts (3d ed. 1957) § 94.

■ The task of ascertaining what an official in charge of accepting bids "should" have known or suspected is, of course, not always an easy one. Mistake-making contractors will naturally seek to impose upon such officials a rather high level of brillance for the purpose of detecting the error. If, for instance, the knowledge of the Government's "staff of experts" available to the contracting officer is imputed to such officer (Saligman v. United States, supra, 56 F.Supp. p. 507) then what the contracting officer "should" have known would cover a very wide range indeed. However, the test here, as in so many areas, must be that of reasonableness, i. e., whether under the facts and circumstances of "the particular case there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer", Welch, Mistakes in Bids, 18 Fed.B.J. 75, 83 (1958), without making it necessary for the agency's experts in every case to assume "the burden of examining every * * * bid for possible error by the bidder." Saligman v. United States, supra, p. 508.

■ There is here no contention that the contracting officer had himself, prior to the bid opening, estimated a price for the property in question substantially different from that of plaintiff's bid (cf. Allied Contractors, Inc. v. United States, supra; Frazier-Davis Construction Co. v. United States, 100 Ct.Cl. 120 (1943)) or that he had knowledge of previous purchases of the same or similar article at substantially different prices. Welch,

Mistakes in Bids, supra, at p. 83. Instead, reliance is placed only on the alleged wide range in the bids and the inferences that defendant's contracting officer should have drawn therefrom. Limiting ourselves to this one factor, plaintiff is correct that where it is obvious from the range of bids itself that a mistake must have been made, or that there is a real possibility of such error, and the Government has done nothing by way of making appropriate inquiry, relief will be afforded. Universal Transistor Products Corp. v. United States, 214 F.Supp. 486 (E.D.N.Y.1963); Alta Electric & Mechanical Co. v. United States, supra; Kemp v. United States, supra; Saligman v. United States, supra; C. N. Monroe Manufacturing Co. v. United States, 143 F.Supp. 449 (E.D.Mich.1956).

■ Applying the above tests to the instant fact situation, it cannot be concluded, upon the basis of the record presented on these motions, that the disparity in bids constituted constructive notice of the possibility of error.

Bid Item 34 of the surplus Government property herein involved, denominated a "lathe, chucking right angle carriage", was accompanied by a long description of its type and equipment. The description closed with the information that the lathe's condition was "Used-Fair" and that defendant's acquisition cost had been $50,072.

Plaintiff's bid set forth the figure of $7,751.51 for this item. The second highest bid was $3,441. Three other bids were also received in the amounts of $2,429.99, $1,511 and $288, respectively. Plaintiff says its bid, actually intended to apply instead to Item 33 (a different kind of lathe) but mistakenly inserted for Item 34 during the process of transposing the figures from its worksheets to the bid form, was so much higher than the other Item 34 bids that defendant should at least have been required to make inquiry about the possibility of error before accepting it.

However, the Item 34 range of bids in and of itself is not shown to be so great as to have reasonably created a suspicion

of error. To be sure, plaintiff's bid was 125 percent higher than the second highest.[2] But the second highest was 42 percent higher than the third, 128 percent higher than the fourth, and 1,095 percent higher than the fifth. The fourth bid was 424 percent higher than the fifth. There was thus a wide range on a percentage basis between the various bids, the difference between plaintiff's bid and the second highest being even less than the differences between some of the other bids. As compared with the differences between the second, third, fourth and fifth bids, none of which are also claimed to have been the results of mistakes, plaintiff's high bid did not tower over the second. As the court said in Alabama Shirt & Trouser Co. v. United States, supra: "The bid was low, but the whole set of bids covered so wide a range of prices that the price, in itself, would not necessarily have put the Government's agents on notice that it was made by mistake." (121 Ct.Cl. p. 331.) And this is especially so when plaintiff's bid of approximately $7,700 is related to an original acquisition cost of over $50,000.

■■ Furthermore, as surplus property, a wider range of bids would not be unexpected. United States v. Sabin Metal Corp., 151 F.Supp. 683 (S.D.N.Y. 1957), aff'd, 253 F.2d 956 (C.A.2, 1958). It is true that, where the price bid is so obviously disproportionate to the value of the article as to alert the contracting officer to the strong possibility of error, the contract resulting from the acceptance of the bid is subject to rescission. C. N. Monroe Manufacturing Co. v. United States, supra; United States v. Metro Novelty Manufacturing Co., supra. Ascribing a value to used surplus property in "fair" condition is, however, most difficult. Here, much naturally depends upon "the use to which the property was to be put by the particular bidder or the chance of resale thereof. The mere difference in the prices bid for such property would not necessarily put the con-

tracting officer on notice of a mistake as would a like difference in the prices quoted on new equipment, supplies, etc., to be furnished." United States v. Sabin Metal Corp., supra, 151 F.Supp. at 689.

In Sabin Metal, the bids for the surplus aircraft engine parts which the Air Force had scrapped but which were still "in original manufacturer's pack" ranged from $337.28 to $9,351.30, the second highest bid being $4,642.71. No relief was afforded the high bidder which had made a multiplication error in computing its bid. Plaintiff's attempt to distinguish the Sabin Metal case on the ground that what was involved there were "scrap" airplane engine parts as distinguished from an operating machine, though used, is not persuasive. With surplus used machines or parts, the line between what one buyer may consider as scrap and what another may consider as still usable, if a buyer could be found, may well not be precise. Evidently the $288 bidder on the item here involved considered the lathe to have only scrap value, but the others nevertheless presumably felt that it still had some potential usable value.

■ Nor is there anything shown to indicate that it should have been obvious to the contracting officer that plaintiff's bid on Item 34 was actually intended to apply to the adjacent Item 33. Item 33 was described as a vertical turret lathe, its condition also being set forth as "Used-Fair" and its acquisition cost as $54,780. The bids on that item ranged from a high of $10,800 to a low of $288. Thus, it was the same general type of equipment as Item 34, in the same condition, in approximately the same acquisition cost area, and with a bid range going down as low as for Item 34. (Evidently the low bidder considered that machine also to be worth only scrap value, although plaintiff says it had a much greater market value than Item 34.) There was thus nothing to make it apparent that plaintiff's bid was intended to apply to the Item 33 lathe instead of the Item 34 lathe.

Considering all aspects of this case on the record as presented on these motions, recovery is not possible. The parties agree there is no genuine issue as to any material fact and neither seeks a trial, nor does plaintiff demonstrate that it would be able to prove more at a trial than is shown by the record herein presented. Consequently, plaintiff's motion for summary judgment should be denied, defendant's cross-motion granted, and plaintiff's petition dismissed.