**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**SYSTRON–DONNER CORPORATION,
Defendant-Appellant.**

**No. 71–1455.**

United States Court of Appeals,
Ninth Circuit.

Sept. 27, 1973.

Harold C. Nachtrieb (argued), of Miller, Groezinger, Pettit, Evers & Martin, San Francisco, Cal., Lingel H. Winters, Gen. Counsel, Systron-Donner Corp., Concord, Cal., for defendant-appellant.

Walter H. Fleischer (argued), L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., Peter R. Goldschmidt, Asst. U. S. Atty., San Francisco, Cal., Thomas J. Press, Michael C. Farrar, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and CURTIS,* District Judge.

WALLACE, Circuit Judge:

The United States brought suit against Systron-Donner Corporation, a California corporation, alleging common-law fraud, charging violations of the False Claims Act,[1] and seeking recovery of money paid by mistake.[2] The district court dismissed the fraud and False Claims Act counts but, after a court trial, allowed the United States to recover $39,681.46 under the common-law doctrine of payment by mistake. Systron-Donner appeals and we reverse.

During 1959 and 1960, the Department of the Navy awarded to the Lock-

---

* Honorable Jesse W. Curtis, Jr., United States District Judge, Los Angeles, California, sitting by designation.

1. 31 U.S.C. § 231 et seq.

2. The district court had jurisdiction under 28 U.S.C. § 1345. We have jurisdiction of the appeal from its final judgment. 28 U.S.C. § 1291.

heed Aircraft Corporation, Missiles and Space Company (Lockheed) four cost-plus-fixed-fee contracts for the production of the Polaris missile. Thereafter Lockheed awarded Systron-Donner three subcontracts for the production of 206 ignition programmers. Unlike the cost-plus prime contract, these subcontracts were for a fixed price. Systron-Donner submitted a price proposal or offer to Lockheed during the formation of the subcontracts. After a period of negotiation, a reduced unit price was agreed upon.[3]

The original price proposal contained cost breakdowns for various items. These breakdowns included certain erroneous double entries for material and hardware, aggregating $39,681.46 for the 206 programmers. Lockheed did not know of this mistake inclusion when it entered into the fixed unit price subcontracts although it had reviewed the proposal before awarding them to Systron-Donner. Thus the final unit price agreed upon may have included the value of the double entries and the United States would have paid Lockheed that additional amount, as part of its cost, plus a fixed fee.

The district court entered judgment for the government for the full amount of $39,681.46. It reasoned that the United States labored under an erroneous belief that the unit price did not include double charges, that this mistake was material to the payment of the con-tract price because the government would not have paid had it known the true facts, and that, therefore, the United States should recover the amount paid due to mistake. Although Systron-Donner questions the factual findings of the trial court as not supported by the evidence, it did not sustain its burden to show them to be clearly erroneous. The only remaining question is one of law.[4]

Undoubtedly the common-law remedy of payment by mistake is available to the United States independent of its statutory remedies.[5] "The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." United States v. Wurts, 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). "If the government made these payments under an erroneous belief which was material to the decision to pay, it is entitled to recover the payments." United States v. Mead, 426 F.2d 118, 124 (9th Cir. 1970). However, the payments in *Wurts* were income tax refunds and those in *Mead* were made to farmers pursuant to a conservation program. Here we are concerned with payments under the terms of negotiated contracts. The question is whether the result should be different.

The right of restitution due to a mistake in payment prevents the unjust enrichment of the payee at the expense of the payor. Thus a payment made

3. The reduction in the contract price for the 206 units ($93,925.70) was more than twice as large as the duplicate charges in Systron-Donner's proposal for which the government seeks repayment. There is no indication whether or not this reduction may have compensated for the duplication.

4. Systron-Donner also raised a standing or privity question. As the government was not a party to the Lockheed contract with Systron-Donner, the question is properly raised as to whether the government can maintain this action. It did not preserve the right by appropriate requirements in its prime contract with Lockheed. It did not join Lockheed in this action.

It may well be that the government can find a basis for standing due to the expenditure of government funds through another party. *See* Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 120–122, 74 S.Ct. 403, 98 L.Ed. 546 (1954); United States ex rel. Marcus v. Hess, 317 U.S. 537, 544, 63 S.Ct. 379, 87 L.Ed. 443 (1943). It may also be that application of third-party beneficiary law would be of assistance to the government. However, we are not disposed to reach that question because we choose to reverse on other grounds.

5. *See, e. g.,* False Claims Act, 31 U.S.C. § 231 et seq. The pricing-mistake provisions of 10 U.S.C. § 2306(f) (as amended by Act of Sept. 10, 1962, Pub.L. No. 87,653, § 1(d), 76 Stat. 528) are not applicable to these contracts which were formalized prior to the effective date of the amendment.

pursuant to the terms of a supposed contract or a mistaken belief in the existence of a non-contractual duty can be recovered. *See* Restatement of Restitution §§ 15, 19 (1937). However, that theory does not apply here because these contracts are not supposed or non-existent. The parties did not lack the capacity to contract and the objects of the contracts were not illegal. The critical point is that unless Systron-Donner was unjustly enriched, the United States cannot recover in restitution. *See* Restatement of Restitution §§ 1, 12, 60 (1937). Therefore, we must first determine whether Systron-Donner was unjustly enriched.

■■ The claimed injustice derives from Systron-Donner's non-fraudulent duplication of cost entries in the computation of its offer for a fixed-price contract. In other words, the company made a unilateral mistake in the formation of its bid.[6] The mistaken calculation of a subcontractor's bid does not of itself render a contract voidable. There is still an objective agreement as to the terms of the contract. *See* Restatement of Contracts § 503 (1932); 3 Corbin on Contracts § 609, at 679 (1960). Under similar circumstances, courts have enforced a contract against the mistake maker, holding him to the terms of his low bid on construction contracts[7] or his high bid for the sale of scrap or surplus property.[8] Where the contractual bid has been accepted, the courts have allowed the offeree the benefit of the bargain to the detriment of the bidder.

■ Systron-Donner presents the opposite problem: should the bidder be allowed the benefit of the bargain when he mistakenly overbids rather than underbids? The government contends this is a one-way street. If the subcontractor's mistake results in an accepted bid too low, he may not complain; but if his mistake results in an accepted bid too high, the contractor may recover from the subcontractor. When equitable powers are involved, close scrutiny must be given to a result which appears to be inequitable.

■ Not unexpectedly, we have found no reported cases where someone attempted to rescind an overbid subcontract, probably because the overbid would not be the lowest bid and would seldom be accepted. But if someone offers to do a $300 job for $500 and that bid is accepted, there seems to be no basis in law or logic, absent fraud, for denying the bidder his profit. He may be enriched, but not unjustly so. The presence of the government as a party to the prime contract should not affect that result.

Reversed and remanded.

ALFRED T. GOODWIN, Circuit Judge (dissenting):

Because the case is not one likely to occur again (Congress has closed the gate) I have been reluctant to record my dissent. But I believe the district court correctly perceived the problem and reached the right result. I would affirm.

Here there was no competitive bidding between Lockheed's suppliers, so the usual safeguards of the market place do not even in theory protect Lockheed's ultimate purchaser against overcharges. Systron-Donner's argument is that its bid to Lockheed became a contract, and that when Lockheed agreed to pay the

---

6. The unilateral mistake was one of computation. It was entirely antecedent to the offer communicated to Lockheed. The actual offer made was the one Systron-Donner actually intended, and the negotiations concerned this superseding offer. If either Lockheed or the government mistakenly paid too much, there was no mutual mistake, but rather differing mistakes. Mistakes of both parties do not render a contract voidable if they relate to different matters.

7. *See, e. g.,* Allied Contractors, Inc. v. United States, 310 F.2d 945, 946, 159 Ct.Cl. 548 (1962); United States v. Conti, 119 F.2d 652, 656 (1st Cir. 1941).

8. *See, e. g.,* Wender Presses, Inc. v. United States, 343 F.2d 961, 962, 170 Ct.Cl. 483 (1965); United States v. Sabin Metal Corp., 151 F.Supp. 683, 688 (S.D.N.Y.1957), aff'd, 253 F.2d 956 (2d Cir. 1958).

contract price, that price, with all its faults, became the "cost" item to be calculated in the cost-plus statement Lockheed rendered to the United States.

The majority accepts too easily the argument that Lockheed could not recover the overcharge from Systron-Donner, and that therefore the cost item is immutable when passed along to the government. I might be willing to accept this argument if Systron-Donner had been the winner of a bidding competition with other subcontractors. There would then be some reason to say that Lockheed was not injured by the overcharge because the next lowest bidder would have charged even more. But here, Lockheed would have been injured by the overcharge but for the willingness of the government to buy hardware on a cost-plus basis. The majority's decision not only provides no incentive to contractors and subcontractors to audit their bids carefully, but it tends to reward the careless with unanticipated profits as the result of a want of attention to detail. If, as a result of a misunderstanding on the part of Lockheed, Lockheed had overcharged the Government because of Lockheed's error in computing the amount due Systron-Donner rather than Lockheed's actual cost, the Government could recover this overpayment, presumably even following it into the hands of Systron-Donner if the payment had been erroneously passed on. *See,* United States v. Mead, 426 F.2d 118 (9th Cir. 1970).

Unless the interest, which would be protected by enforcing contracts outweigh society's interests in the public treasure, the burial of a cost item erroneously in a contract should not be permitted to displace the equitable remedy of restitution for payment made by mistake. Here, I believe the equities lie with the government.

Systron-Donner asserts that its expectation interests, i.e., that it receive the full contract price, including the $39,000 which the district court found to be attributable to double counting, are protected by and should prevail under the rule of law which holds that a unilateral mistake in the formation of a contract bid does not affect the enforceability of an otherwise valid contract. But few rules of law are so well-established that they may not be called upon to justify their existence when the reason for the rule may no longer exist.

Where the ultimate victim of the mistake has agreed to pay cost, equity should require that the costs be genuine and that the party who made the mistake not be allowed to profit from it.