Sandra SPECKEL, a minor, appearing by Raymond SPECKEL, her father and natural guardian, Respondents,

v.

Laurri PERKINS, et al., Defendants and Third Party Plaintiffs, Appellants,

v.

Beverly SPECKEL, Third Party Defendant.

No. C5–84–1850.

Court of Appeals of Minnesota.

April 2, 1985.

Stephen Eckman, Eckman, Strandness & Egan, Minneapolis, for respondents.

Kathleen Drake, Albers & Associates, Bloomington, for appellants.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LANSING, Judge.

This dispute arose out of pretrial settlement negotiation letters, one of which erroneously contained an offer of $50,000. The trial court ordered performance of the settlement agreement. We reverse.

## FACTS

The disputed agreement purportedly settled a personal injury action. Sandra Speckel was injured when a car driven by Laurri Perkins collided with a truck driven by Beverly Speckel, in which Sandra Speckel was a passenger.

In December 1983 Speckel's attorney, Stephen Eckman, demanded the insurance policy limits of $50,000 to settle the case. In January 1984 Perkins' attorney, Donald Wheat, wrote to Eckman to inform him that he had conveyed the settlement offer to his client's insurance carrier, American Family Insurance Company. Wheat's letter said, "Although I think your demand for settlement is overstated, I have nonetheless sent it on to the insurance carrier for my client for consideration and acceptance or rejection."

The parties exchanged no more letters until about a week before the scheduled trial. Wheat sent the following letter, dated April 14, 1984, to Eckman:

Dear Mr. Eckman:

In reviewing my file concerning this claim and the upcoming trial, I note that we have a demand in our file for policy limits of $50,000.00. While I agree that the case has some value, I cannot agree that this is a limits case.

At this point in time I have authority to offer you $50,000.00 in settlement of your claim against my client and her mother. I would appreciate hearing from you at your earliest convenience and would be pleased to carry any offer you may wish to make back to my client's insurance company for their consideration.

Yours very truly,

/s/Donald A. Wheat/cjh

Wheat's secretary, Carol J. Heimness, signed the letter. Wheat never saw it. According to his affidavit, he was in trial on another matter at the time. He dictated the letter offering $15,000 in settlement, but his secretary erroneously typed $50,000.

On receiving the letter Eckman promptly wrote the following letter to Wheat, dated April 17, 1984:

Dear Mr. Wheat:

Your offer of $50,000 to settle this case on behalf of the Perkins Defendants is hereby ACCEPTED.

Please forward your draft made payable to Sandra Speckel and Stephen S. Eckman, her attorney, in the amount of $50,000. I will forward the appropriate Pierringer Release.

I have notified the Court that the matter has been settled.

Very truly yours,
STEPHEN S. ECKMAN

Wheat said he contacted the court on April 18, before he received Eckman's letter, to request a continuance because his expert witness was ill. He was told that the other parties would be contacted regarding his request. Later that day Eckman called to remind him that the case had been settled, and Wheat responded that the amount should have been $15,000 and he did not have authority to offer $50,000.

Eckman's affidavit says that when he was contacted by the court concerning Wheat's request for a continuance, he informed the judge that the matter was settled, and the judge instructed him to circulate letters to the various parties' counsel and to the court confirming the arrangements. Eckman called Wheat to say that he considered the matter settled, had taken steps in reliance on the settlement, and would advise the court of the settlement. He says Wheat ended the conversation with "very good."

Wheat sent Eckman a letter dated April 20, 1984, saying he had received Eckman's letter of April 17, he had told Eckman over the phone that the amount was mistaken, he thought the mistake was obvious, the amount should have been $15,000, and he had not reviewed or signed the letter.

Eckman responded in a letter dated April 24 that he was "shocked" to learn Wheat did not consider the matter settled, and in the "honest belief" that it was settled he had cancelled the trial date, released his expert witnesses, cancelled a deposition, waived a liability claim against the third-party defendant (who was his client's mother), and referred the underinsured motorist portion of the lawsuit to arbitration.

Eckman pursued collection from Wheat's office and with the chief staff attorney of the insurance carrier and finally brought a motion to compel performance. Neither Wheat nor Eckman made any effort to have the matter reinstated on the trial calendar.

The trial court granted the motion to compel performance, finding the letter an "unequivocal offer of $50,000" and Wheat's statement that the case was not a limits case "merely a statement of his personal belief." The trial court determined, in addition, that the offer should be enforced because Wheat, although informed by Eckman over the telephone and by two letters that the trial date was stricken, made no effort to inform the court of his belief that the case was not settled or to have the matter reinstated on the trial calendar.

## ISSUES

1. Is an order compelling performance of a disputed settlement agreement appealable?

2. Was the letter a valid offer enforceable upon acceptance?

## ANALYSIS

### I

■■ Rule 103.03(e) of the Minnesota Rules of Civil Appellate Procedure authorizes appeal to this court "from an order which, in effect, determines the action and prevents a judgment from which an appeal might be taken." The trial court's order

compelling performance of the disputed settlement agreement determines the result in this case—that Perkins is liable to Speckel for $50,000—and prevents a trial which would have resulted in a judgment from which an appeal might have been taken. The order is therefore appealable under Minn.R.Civ.App.P. 103.03(e).

## II

Wheat does not dispute his secretary's authority to sign the letter, nor does he deny his authority, as an attorney, to make and accept settlements on behalf of clients. Wheat acknowledges his obvious carelessness in allowing a settlement letter to be mailed without reading it, but argues that his carelessness should not be determinative.

■ When the critical evidence is documentary, there is no need to defer to the trial court's assessment of its meaning or credibility. *See Northern States Power Co. v. Williams*, 343 N.W.2d 627, 630 (Minn.1984) (citing *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302, *cert. denied sub nom., Arms v. Watson*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). In this case the trial court relied solely on documentary evidence; we therefore are not required to defer to its conclusions regarding the formation of the agreement in question.

■ A compromise settlement of a lawsuit is contractual in nature. *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (1963). Therefore, to be valid and binding it requires a definite offer and acceptance. Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intention. *Markmann v. H.A. Bruntjen Co.*, 249 Minn. 281, 287, 81 N.W.2d 858, 862 (1957); *Cederstrand v. Lutheran Brotherhood*, 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962) ("Expressions of mutual assent, by words or conduct, must be judged objectively, not subjectively"). The trial court, therefore, correctly disregarded Wheat's

protestations that the offer was unintended. The subjective intent of Wheat and his client is irrelevant. The trial court also correctly disregarded the fact that the letter contained the unintended amount as the result of a mistake. A unilateral mistake in entering a contract is not a basis for rescission unless there is ambiguity, fraud, misrepresentation, or where the contract may be rescinded without prejudice to the other party. *Olson v. Shephard*, 165 Minn. 433, 206 N.W. 711 (1926).

■ Several aspects of the offer, however, do negate its validity. A duty to inquire may be imposed on the person receiving the offer when there are factors that reasonably raise a presumption of error. *Wender Presses, Inc. v. United States*, 343 F.2d 961, 963, 170 Ct.Cl. 483 (1965). An offeree "will not be permitted to snap up an offer that is too good to be true; no agreement based on such an offer can * * * be enforced by the acceptor." *Id.* (citing 1 *Williston on Contracts* § 94 (3d ed. 1957)).

■ In this case Wheat's letter is internally inconsistent. After stating that the case is not worth the policy limits, it proceeds to offer precisely that amount. We find that this internal inconsistency raises a presumption of error and imposed upon Eckman a consequent duty to inquire, particularly in this context—the policy limits, requested when negotiations began, were offered on the eve of trial when the parties were presumably prepared and circumstances had not changed. Finally, the letter expressly states that Wheat "would be pleased to carry any offer [Eckman] may wish to make back to [Wheat's] client's insurance company for their consideration." Despite offering the full amount of the demand, the language does not indicate that an acceptance is anticipated, but rather calls for a counter-offer. We cannot agree that it is an offer enforceable upon acceptance.

The trial court also noted that although Eckman informed Wheat over the telephone and by two letters that the trial date

was stricken, Wheat made no effort to inform the court that he did not consider the matter settled, and he did not reinstate the trial date. Although it would have been appropriate for Wheat to inform the court that he disputed the settlement, we cannot read waiver into his actions. He represented the defendants in this matter, who were not in court voluntarily and thus had no interest in assuring that the matter was tried. It could as easily be said that Speckel's attorney neglected a duty to confirm the settlement before notifying the court to take the matter off the calendar.

## DECISION

The letter containing the disputed settlement amount raised a presumption of error and a consequent duty to inquire. It therefore was not a valid offer enforceable upon acceptance. We reverse the trial court's order compelling performance of the settlement agreement.

Reversed.