Leroy BAUER, Appellant,

v.

**AMERICAN INTERNATIONAL ADJUST-MENT COMPANY, INC., et al., Pennsylvania and New Hampshire Insurance Company, Respondents.**

No. C6–85–2290.

Court of Appeals of Minnesota.

July 8, 1986.
Review Denied Sept. 24, 1986.

Robert A. Nicklaus, Mary Kendall Adler, Nicklaus, Monroe, Fahey & Cooper, Chaska, for appellant.

Michael R. Quinlivan, Arthur, Chapman, Michaelson & McDonough, Minneapolis, for American Intern. Adjustment Company, Inc., et al.

Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Pennsylvania and New Hampshire Ins.Co.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge

This appeal is from judgment entered on behalf of respondent insurance companies and their agent. The trial court rescinded an alleged settlement agreement between appellant LeRoy Bauer and respondents because it was founded on a unilateral mistake of material fact known to Bauer. We reverse.

## FACTS

This disputed agreement purportedly settled a products liability action. LeRoy Bauer brought suit against the distributor and manufacturer of a spray nozzle used to apply chemicals to crops. He claims his corn crop was damaged as a result of a defective nozzle.

On December 26, 1984, an offer of settlement was made to Bauer by an adjuster for respondent American International Adjustment Company (American), an agent for both respondent New Hampshire Insurance Company (insurer for the manufacturer) and respondent National Union Insurance Company (insurer for distributor). The adjustor wrote Bauer's attorney:

Dear Mr. Nicklaus:

Please be advised that this file has been reassigned to my desk for handling. Please address all future correspondence to my attention.

It is my understanding that our attorney made an offer of settlement to you in the amount of $17,000. I have personally reviewed this file and feel that this offer is extremely generous and is an amount which I never would have considered offering on this case. I feel that we have an extremely good chance of getting a defense verdict on this case. As such, I will give you and your client 30 days in which to accept our present offer of $17,-000 and after that time the offer of $17,-000 will be withdrawn.

In addition, please be advised that I will conduct the negotiations on this file in the future and if you wish to settle this case, please communicate directly with me.

I look forward to your response.

Sincerely,

Kristi E. Teigen

Senior Claims Adjuster

Nicklaus admitted that there had been no offer of any kind ever made to him before the December 26th letter was received.

On January 10, 1985 Nicklaus wrote to Teigen as follows:

Dear Ms. Teigen:

Thank you for your letter of December 26, 1984 regarding further negotiations in handling this file. I have discussed your offer of $17,000.00 with my client. As you know we had previously reduced our demand to $19,500.00 and then recently in my letter to Mr. Kreuziger of November 29, 1984 to $19,000.00. We feel this is a substantial reduction for a loss which will easily exceed $30,000.00 plus interest on the liquidated amount as

of 1981. Nevertheless, another small reduction would settle the case at this time my client would be willing to settle for $18,500.00. Please advise me if you are willing to raise your settlement offer to meet that reduction.

Yours very truly,

Robert A. Nicklaus

Nicklaus then wrote to Teigen on January 23, 1985 accepting the original $17,000 offer and asking her to prepare the settlement draft. Two days later Teigen responded:

Dear Mr. Nicklaus:

Please be advised that I have received your letter dated January 23, 1985, indicating that you would accept $17,000 for the settlement of this case.

In your letter of January 10, 1985 you rejected our offer of $17,000. By rejecting that offer and making a counterdemand, the offer of $17,000 was made void. Therefore, I am no longer able to make that payment to you.

Sincerely,

Kristi E. Teigen

Senior Claims Adjustor

Bauer commenced a declaratory judgment action seeking to collect the $17,000. The trial granted judgment in the insurer's favor, finding that although a contract was formed when Bauer's attorney accepted the offer within the 30 day period originally specified, it was open to recission because Bauer's attorney knew that Teigen's offer was grounded on her mistaken belief that it had been previously made.

## ISSUES

1. Is a party's knowledge of another's unilateral mistake grounds for recission of a settlement agreement?

2. Was the insured's right to accept an offer of settlement within a specified 30 day time period revoked by his counteroffer?

## ANALYSIS

■ 1. The trial court, relying on this court's decision in *Speckel v. Perkins,* 364 N.W.2d 890 (Minn.Ct.App.1985), determined that grounds existed for recission of the settlement agreement when Bauer's attorney failed to inquire about Teigen's allegedly erroneous offer.

In *Speckel,* plaintiff brought suit against Perkins. Plaintiff's attorney wrote to Perkins attorney demanding the policy limits of $50,000 in settlement of plaintiff's claim for personal injuries. Perkin's attorney responded that he thought the demand was overstated but nevertheless would pass it on to the insurance company for its consideration.

Shortly thereafter, Perkins attorney wrote a second time to plaintiff's attorney, reiterating his position that the matter was not a "limits case" but offering to settle the action for the $50,000 policy limits. Plaintiff's attorney immediately accepted the offer by return mail. Perkins attorney refused settlement claiming $15,000, not the $50,000 figure typed in by mistake, was the offer meant to be included in his second letter. The trial court granted plaintiff's motion to compel settlement.

On appeal, we noted that a compromised settlement of a lawsuit was contractual in nature. *Speckel,* 364 N.W.2d at 893. Thus, to be valid, it required a definite offer and acceptance. *Id.* Although no grounds existed to rescind the contract on the basis of a unilateral mistake, we refused to enforce the agreement holding that the offer given raised a presumption of error which imposed on plaintiff the duty to inquire about its validity. *Speckel,* 364 N.W.2d at 893. We stated:

A duty to inquire may be imposed on the person receiving the offer when there are factors that reasonably raise a presumption of error. *Wender Presses, Inc. v. United States,* 343 F.2d 961, 963, 170 Ct.Cl. 483 (1965). An offeree "will not be permitted to snap up an offer that is too good to be true; no agreement based on such an offer can * * * be enforced by the acceptor." *Id.* (citing 1 *Williston on Contracts* § 94 (3d ed. 1957)).

In this case Wheat's letter is internally inconsistent. After stating that the case is not worth the policy limits, it proceeds to offer precisely that amount. We find that this internal inconsistency raises a presumption of error and imposed upon [plaintiff] a consequent duty to inquire * * *.

*Id.*

In this case we are not convinced that a duty to inquire about the validity of the settlement offer should be imposed on Bauer.

Although Teigen's letter raised a "presumption of error" (Bauer's attorney admitted to that fact by stipulation), no consequent duty to inquire arises here where the mistaken assumption resulted from miscommunication between two agents of the same insurance company. It was not the responsibility of Bauer's attorney to assist in the coordination of the opposing party's settlement efforts.

Moreover, although Bauer's attorney knew of the mistake made by Teigen it may not have necessarily alerted him to inquire further because the $17,000 offer by Teigen was not out of line with the demands made by Bauer's attorney in his communications with National Union's attorney. (In his letter dated January 10, 1985 Bauer's attorney Nicklaus wrote to Teigen that he earlier demanded $19,500 and then $19,000 to settle the case. It is presumed that these demands were included in the file sent to Teigen from National Union's attorney when she began handling disposition of the matter).

■ 2. The insurance companies maintain that even if *Speckel* is not applicable, no basis exists for enforcement of the agreement because Bauer's attorney's letter of January 10, 1985 asking for a settlement figure of $18,500 was a counter-offer and thus a rejection by Bauer of his right to accept Teigen's original offer of $17,000.

Bauer argues that the January 10, 1985 letter was one of mere inquiry, inviting a response by the insurance company, which was received a week later. He further

argues that the inquiry letter was sent well within the time period specified in the original offer, thus, allowing him the opportunity to accept before the 30 days ran the first offer given if the insurance company was not receptive to his inquiry for an increased settlement amount.

We agree with Bauer. Neither the letter nor the response to it by the insurance companies indicates that either party viewed Bauer's $18,500 "demand" as anything but a continuation of the negotiation process.

The tone of the January 10 letter suggests that Bauer's attorney was merely engaging in one last effort to negotiate a higher settlement amount from the insurance company. There was no express rejection of the $17,500 figure made in the letter nor did it unequivocally state that $18,500 was necessary to settle the case. Perhaps more telling of the letter's effect is the response given to it by Teigen a week later. In her letter dated January 17, 1985, Teigen stated that she could not consider Bauer's demand of $18,500 indicating once again her belief that liability was questionable on the part of both the manufacturer and distributor of the spray nozzle. At that time she gave no indication she was formally withdrawing the $17,000 offer nor did she acknowledge that the $18,500 figure constituted a rejection of the insurance companies original settlement amount. In fact, it was not until after Bauer's attorney finally accepted the $17,000 offer within the thirty day period that Teigen first characterized the $18,500 inquiry as a counter-offer.

## DECISION

A binding contract was formed on January 23, 1985 when Bauer accepted the insurance companies original offer of $17,000.

Reversed.