# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Lulus Ostrich Ranch | ) ASBCA Nos. 59252, 59450, 59598 |
| | ) 59814, 59815 |
| | ) |
| | ) |
| Under Contract Nos. 48695391, 48695490 ) | |
| 48695290, 48695390 ) | |

APPEARANCE FOR THE APPELLANT:     Mr. William R. Hayward
                                  Owner

APPEARANCES FOR THE GOVERNMENT:   Daniel K. Poling, Esq.
                                    DLA Chief Trial Attorney
                                  Robin Walters, Esq.
                                  Michael P. Thiefels, Esq.
                                    Trial Attorneys
                                    DLA Disposition Services
                                    Battle Creek, MI

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

## FINDINGS OF FACT

In January 2014, appellant, after submitting a sealed bid in response to an Invitation For Bid (IFB), contracted to buy and remove four different types of metallic and non-metallic scrap from government locations in Afghanistan (R4, tabs 1-2, 8). The government awarded the contract only after appellant protested the government's earlier, initial decision *not* to award a contract to appellant out of concern that appellant could not perform at its bid prices (R4, tabs 5, 7). The contract states "Refer to IFB for complete item description" (R4, tab 8 at block 10), and for each type of scrap, the IFB includes a "SALES CONTRACT/BIDDING" provision that states:

> This contract is a sales contract. The bidder will be
> purchasing scrap property from the United States
> Government. At no time will there be a payment by the
> USG to the bidder for services within this contract. The
> property removed by the bidder will be scrap property and
> in poor condition. The bidder will be required to remove
> all property in this item description regardless of condition.
> *There will be absolutely no changes, modifications,*

> *adjustments, or negotiations concerning bid price after*
> *award.*

(R4, tab 1 at 6-9 (emphasis added))

After the award of the contract appellant told the government that it had made a bid mistake, then went ahead and removed scrap, despite the contracting officer warning that "[t]he bid price will not be adjusted in any way to reflect other bidders [sic] prices"; appellant hasn't paid the government *anything* for any of that scrap (*see* R4, tabs 10-12; tr. 1/219, 2/139-42; app. br. at 15). In August 2014, the contracting officer terminated the contract for default, for non-payment (according to the government) of $1,303,218 (R4, tab 21).

## DECISION

*ASBCA No. 59252: Price Reformation*

Appellant requests reformation of its contract prices, saying that after it was awarded the contract it discovered that it had made an arithmetical mistake in its bid that made the prices it offered to pay for the government's scrap too high (*see* app. br. at 10). The government opposes, relying upon the IFB provisions that state there will be "*absolutely* no changes, modification, adjustments, or negotiations concerning bid price after award" (gov't br. at 2, ¶¶ 3, 16) (emphasis added). Appellant counters (app. reply br. at 1) with Federal Acquisition Regulation (FAR) 14.407-4, "Mistakes after award," which, under certain circumstances, authorizes the government to rescind or reform a contract if "a contractor's discovery and request for correction of a mistake in bid is not made until after the award." Appellant points to no authority in which FAR 14.407-4 trumped an "absolutely no changes" provision in an IFB and required reformation of a contract price. Based upon the "absolutely no changes" provisions, appellant's post-award request for reformation of its contract prices is rejected. The appeal is denied.

*ASBCA No. 59450: Request to Stay Payments*

Appellant requests that it be allowed not to have to pay the government for the scrap it removed until after ASBCA No. 59252 is adjudicated (July 25, 2014, letter). With the denial of ASBCA No. 59252, that request is moot, and the appeal is denied.

*ASBCA No. 59598: Contract Termination*

Appellant challenges the termination of its contract for default (app. br. at 13). The government says the termination is justified because appellant never paid anything for the scrap it removed from government locations (gov't br. at 21). Appellant is

silent on whether its non-payment is a default (*see* app. br. at 13).  In not paying for scrap it removed, appellant defaulted, justifying the termination.

Now it's up to appellant to demonstrate that the default is excused. *See Joseph Sottolano*, ASBCA Nos. 59081, 60043, 16-1 BCA ¶ 36,315 at 177,065-67.  Appellant provides no good reason for failing to pay *anything* for the scrap it removed.  Even given the parties' dispute over price, that dispute did not prevent appellant from paying at least the amount it believed it owed under what it believes the contract prices should be.  The appeal is denied.

*ASBCA Nos. 59814 & 59815:  Bad Faith Contract Administration*

Appellant seeks $1,252,543 for allegedly fraudulent contract administration; in other words, bad faith (app. br. at 10-12; Feb. 23, 2015 compls.; app. reply br. at 8-9). *See Dan's Janitorial Service, Inc.*, ASBCA No. 27837, 85-1 BCA ¶ 17,924 at 89,749. However, appellant points to no clear and convincing evidence that the government administered the contract with the specific intent to injure appellant. *See Puget Sound Environmental Corp.*, ASBCA No. 58828, 16-1 BCA ¶ 36,435 at 177,597 (citing *Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012); referencing *Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002); and reciting test for proving bad faith).  The appeals are denied.

CONCLUSION

The appeals are denied.  Accordingly, appellant's recent request that its "debt...be moved back to DFAS – Defense Finance and Accounting until [the Board] has made a decision" is denied as moot.

Dated:  February 6, 2019

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

3

I <u>concur in result</u> (see separate opinion)        I <u>concur in result</u> (see separate opinion)

J. REID PROUTY                                 RICHARD SHACKLEFORD
Administrative Judge                            Administrative Judge
Vice Chairman                                     Acting Chairman
Armed Services Board                       Armed Services Board
of Contract Appeals                         of Contract Appeals

4

## OPINION BY JUDGE PROUTY AND JUDGE SHACKLEFORD CONCURRING IN RESULT

We concur in the result in these appeals, because we agree with the ultimate outcome but not in the brief analysis which leads to that outcome with respect to the issues of contract reformation and bad faith contract administration. Thus, the legal analysis that follows constitutes the precedential decision of the Board on those subjects.

With respect to Judge McIlmail's denial of appellant's request for contract reformation, his opinion provides that appellant is not entitled to reformation because:

> Appellant points to no authority in which the FAR 14.407-4
> trumped an "absolutely no changes" provision in an IFB
> and required reformation of a contract price. Based upon
> the "absolutely no changes" provisions, appellant's
> post-award request for reformation of its contract prices is
> rejected.

Yet, he does precisely what he accuses appellant of doing – he points to no authority in which an "absolutely no changes" provision trumps FAR 14.407. In our view, it does not and cannot.

The sale of federal personal property is governed by Part 102-38 of the Federal Management Regulation (FMR). FMR § 102-38.260 instructs that the administrative procedures for handling mistakes in bids are contained in FAR 14.407. That section of the FAR sets forth the procedures for processing mistakes in bids both discovered before and after award, and since Lulus alleges it discovered a mistake after award FAR 14.407-4 applies. That section of the FAR states in part:

> If a contractor's discovery and request for
> correction of a mistake in bid is not made until after the
> award, it shall be processed under the procedures of
> Subpart 33.2 [Disputes and Appeals] and the following:
>
> (a) When a mistake in a contractor's bid is not
> discovered until after award, the mistake may be corrected
> by contract modification if correcting the mistake would be
> favorable to the Government without changing the
> essential requirements of the specifications.
>
> (b) In addition to...paragraph (a) above...agencies
> are authorized to make a determination --

(1) To rescind a contract;

(2) To reform a contract (i) to delete the items involved in the mistake; or (ii) to increase the price if the contract price, as corrected, does not exceed that of the next lowest acceptable bid under the original invitation for bids; or

(3) That no change shall be made in the contract as awarded, if the evidence does not warrant a determination under subparagraphs (1) or (2) above.

In addition to the regulatory requirement, the right to assert a mistake in bid is based upon pure contract law. In *Wender Presses, Inc. v. United States*, 343 F.2d 961 (Ct. Cl. 1965), a mistake in bid after award case involving the sale of surplus government property, the plaintiff sought rescission of the portion of the contract upon which a mistake in bid was alleged and recovery of its bid deposit. There the Court stated:

It is plain that plaintiff may recover only if defendant's responsible officials knew or should have known of the mistake at the time the bid was accepted.

Since plaintiff did not directly apprise defendant of the mistake prior to the acceptance of plaintiff's bid...so that there is no showing of any actual knowledge, the only question is whether defendant's officials should have known of the mistake. Included in this problem is the question of whether, even though they could not have known with certainty from the bid data that a mistake had been made, there nevertheless was enough to have reasonably cast upon defendant's officials the duty to make inquiry, which inquiry would have led to the requisite knowledge. For although an award normally results in a binding contract fixing the parties' rights and obligations so that "Ordinarily no relief will be granted to a party to an executory contract in the case of a unilateral mistake," *Saligman v. United States*, 56 F. Supp. 505, 507 (E.D. Pa., 1944), nevertheless an acceptance of a bid containing a palpable, inadvertent, error cannot result in an enforceable contract. An "offeree will not be permitted to snap up an offer that is too good to be true; no agreement based on such

6

an offer can then be enforced by the acceptor." 1 Williston, Contracts (3d ed. 1957) § 94. [Citations omitted]

343 F.2d at 962-63.

Perforce, a so-called "absolutely no changes" provision in a contract cannot permit a contracting officer to accept a bid, knowing it was in error, since in that circumstance no enforceable contract could come into existence and such an agreement would be unenforceable. Thus, the proper way to initially analyze this case is to determine if the contracting officer knew or should have known a mistake was made at the time of the award. As the *Wender* Court pointed out, the test as to whether the contracting officer knew or should have known of the mistake is one of reasonableness, "i.e., whether under the facts and circumstances of 'the particular case there were any factors which reasonably should have raised the presumption of error in the mind of the contracting officer.'" *Wender*, 343 F.2d at 963.

We have reviewed the parties' briefing on this issue, including facts and analyses and find that based upon this record, appellant has not demonstrated that the contracting officer either knew or should have known that a mistake was made in its bid. More particularly, we are persuaded by the arguments made by the government in its brief (gov't br. 6-7) as follows:

> The [CO] did not know the Appellant had made a mistake in its bid price, nor did he have reason to know. The bid sheet submitted by the Appellant contained no obvious errors, no errant marks, no improper payment or weight classification. Instead it demonstrated four line item prices clearly marked in pounds with the prices expressed in dollars as required by the IFB. There was no evidence on the face of the bid that suggested a clerical or mathematical error. In determining whether the contracting officer should have known of the mistake, a "reasonable person standard is used." The Kato Corp., ASBCA No. 47601, 1997 ASBCA LEXIS 127, 97-2, BCA ¶ 29,130 at 144,932.

> In this case [Lulu's] price was not so far off from other bidders as to suggest anything other than different judgments about the cost of doing business in Afghanistan or the revenues to be derived from scrap sales in Afghanistan, especially since the Appellant's plan appeared to rely on exports. Appellant's bid was lower than those of several other bidders. [Lulu's] bid was only

7

slightly higher than the next highest bidder and there was a group of 3 bidders with prices within 20% of the Appellant's.

For these reasons, we conclude that under the particular circumstances of this case, there were no factors which reasonably should have raised the presumption of error in the mind of the contracting officer. Thus we concur in the result reached by Judge McIlmail regarding Lulu's contract reformation claim, though not his analysis.

We similarly diverge from Judge McImail's analysis regarding the set of issues that he characterizes as "Bad Faith Contract Administration" or "fraudulent contract administration," though we come to the same ultimate conclusion. These issues include allegations in Lulu's brief of "alleged contract interference, improper billing, improper contract termination, issuing more contracts than there was available scrap metal, and awarding contracts with the intention of 'giv[ing] only minimum amount of scrap material' [and allegations that] the government lied to appellant's subcontractor and [that on occasion, the government] delivered only dirt." Although we agree with Judge McIlmail's general determination that these bases for Lulus' appeal should be denied, we also believe that, for the most part, he applied the incorrect standard to obtain this result.

In large part, these allegations fit within the category of breaches of the duty of good faith and fair dealing. This doctrine is based upon the notion that every contract "imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)); *see also Kelly-Ryan, Inc.*, ASBCA No. 57168, 18-1 BCA ¶ 36,944 at 180,030; *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,085 at 180,539. Pursuant to this implicit duty, each party's obligations "include the duty not to interfere with the other party's *performance* and not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract.*" *Metcalf,* 742 F.3d at 991 (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The government need not, however, act in bad faith or with intent to injure the contractor to be found liable for a breach of the duty. To be sure, the Federal Circuit's opinion in *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010), seemed to imply such a requirement, but the Federal Circuit's subsequent opinion in *Metcalf* made clear that there was no such intent to injure necessary. *See* 742 F.3d at 992-93 (rejecting requirement to "specifically target" contractor).

Thus, we part ways with Judge McIlmail's opinion on the law applied to this issue. Judge McIlmail's opinion requires that Lulus' point to "clear and convincing evidence that the government administered the contract with the specific intent to injure appellant," and cites the appeal of *Puget Sound Environmental Corp.*, ASBCA No. 58828, 16-1 BCA

8

¶ 36,435 at 177,597. This would be inconsistent with the binding law of *Metcalf* and is not supported by our ruling in the cited case of *Puget Sound*. The issue before us in the cited portion of *Puget Sound* was a challenge to the government's failure to exercise options, which is generally not reviewable unless the government acts in bad faith. *Puget Sound*, 16-1 BCA ¶ 36,435 at 177,596. Similar requirements are applied in challenges to the government's decision to terminate contracts for convenience. *Id.* If there were an allegation here that the government wrong fully terminated Lulus' contracts for convenience, the *Puget Sound* formulation might be proper, but the terminations here were for default, and the portion of Judge McIlmail's opinion that we join already dispatches this argument. Thus, the remaining issues before us here are of contract administration and are not subject to *Puget Sound*'s "specific intent to injure" standard, but are instead governed by *Metcalf*.

Applying the proper standard, we still reach the same result, primarily for lack of record evidence supporting Lulus' allegations. Judge McIlmail directed the parties to reference all factual support for their arguments in their briefs (*see* tr. 2/168-69); Lulus did not do so. Nevertheless, we performed a review of the Rule 4 documents and the transcript of the hearing, and, on these subject areas, the only evidence presented was about delays or problems in allowing Lulus' subcontractor onto the military bases in Afghanistan (*e.g.*, tr. 1/65-66, 211-12), and that the government allegedly provided "dirt" as opposed to scrap metal, as expected (tr. 1/215, 229). This evidence was all based on hearsay, and allegations of the government's bad motives were admittedly speculation (tr. 2/39).

The government, by contrast, presented evidence that access to bases in Afghanistan was properly limited for security reasons (tr. 2/88-90). The government also presented evidence that the scrap provided to all contractors, in accordance with the contract, was not limited to metal, but also included many other things like canvas, glass, wood, PVC pipe, and shredded electronic scrap (tr. 2/78-79). We read this as consistent with the "dirt" of which Lulus complained. The contracting officer also explained that there were multiple scrap metal contract awards made because oftentimes, during the course of contract performance, contractors drop out and there is a need to "surge" for the work (tr. 2/83).

Thus, Lulus presented weak to nonexistent evidence to support its allegations of a violation of the duty of good faith and fair dealing. The government presented evidence that its actions were reasonable undertakings in the war zone in which the contract was performed and where Lulus knew it would be operating. Lulus has not met its burden of proof that government action "interfere[d] with [its] performance" or acted "so as to destroy [Lulus'] *reasonable expectations...*regarding the *fruits of the*

*contract.*" *Metcalf*, 742 F.3d at 991. Accordingly, we agree with Judge McIlmail's decision to deny this portion of the appeals.

Dated: February 6, 2019

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59252, 59450, 59598, 59814, 59815, Appeals of Lulus Ostrich Ranch, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals